NICOLA T. HANNA
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
VICTOR A. RODGERS
California Bar No. 101281
Assistant United States Attorney
Asset Forfeiture Section
    Federal Courthouse, 14th Floor
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2569
    Facsimile: (213) 894-0142
    E-mail: Victor.Rodgers@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>      v.<br><br>$146,780.00 IN U.S. CURRENCY,<br><br>      Defendant.<br>_____<br><br>MANUELA GOMEZ,<br><br>      Claimant.<br>_____ | Case No. CV 17-00399-TJH(JCx)<br><br>**PLAINTIFF UNITED STATES OF AMERICA'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISSOLVE STAY FILED BY CLAIMANT MANUELA GOMEZ AND DECLARATION OF VICTOR A. RODGERS; [NON-PUBLIC DECLARATION IN SUPPORT OF PLAINTIFF UNITED STATES OF AMERICA'S OPPOSITION FILED OR LODGED IN CAMERA UNDER SEPARATE COVER]**<br><br>Date:      June 25, 2018<br>Time:     Under Submission<br>Courtroom:  the Honorable<br>            Terry J. Hatter, Jr. |

## TABLE OF CONTENTS

DESCRIPTION                                                          PAGE

TABLE OF AUTHORITIES..................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES..................................1

I.    PRELIMINARY STATEMENT...........................................1

II.   STATEMENT OF FACTS..............................................1

      A.    The Instant In Rem Civil Asset Forfeiture Action.........1

      B.    The Related State Criminal Case Against Pietro And The
            Parties' Stipulation To Stay This Action Pending The
            Resolution Thereof.......................................3

III.  ARGUMENT.......................................................4

      A.    A Stay (And The Continuation Thereof) Is Appropriate
            Because Civil Discovery Will Adversely Affect The
            Prosecution Of A Related Criminal Case...................4

            1.    The Civil Forfeiture And Criminal Cases Are
                  Clearly Related Under 18 U.S.C. § 981(g)(4)'s
                  Broad Definition...................................6

            2.    The Stay Is Appropriate For Multiple Reasons.......10

      B.    A Stay Is Also Appropriate Under The Court's Inherent
            Power To Control Its Dockets.............................17

      C.    Claimant's Arguments Are Unavailing.....................18

IV.   CONCLUSION.....................................................25

DECLARATION OF VICTOR A. RODGERS.....................................26

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                PAGE

**Federal Cases**

Barker v. Wingo,
       407 U.S. 514 (1972)..................................... 20

In re Ramu Corp.,
       903 F.2d 312 (5th Cir. 1990)........................... 22

Landis v. North American Co.,
       299 U.S. 248 (1936).................................... 18

Leyva v. Certified Grocers of California, Ltd.,
       593 F.2d 857 (9th Cir. 1979)........................... 18

United States v. Four (4) Contiguous Parcels of Property
Situated in Louisville, Jefferson County, Ky.,
       864 F. Supp. 652 (W.D Ky. 1994)........................ 21

Mediterranean Enterprises v. Ssangyong Corp.,
       708 F.2d 1458 (9th Cir. 1983).......................... 17

Mercado v. U.S. Customs Service,
       873 F.2d 641 (2d Cir. 1989) ........................... 24

Suntrust Bank Account Number XXXXXXXXX8359,
       456 F. Supp. 2d 64 (D.D.C. 2006)....................... 14

United States v. All Funds ($357,311.68) Contained in Northern
Trust Bank,
       2004 WL 1834589 (N.D. Tex. Aug. 10, 2004).............. 13

United States v. All Funds Deposited in Account No. 20008524845,
       162 F. Supp. 2d 1325 (D. Wyo. 2001)..................... 5

United States v. All Funds on Deposit in Business Marketing
Account,
       319 F. Supp. 2d 290 (E.D.N.Y. 2004).................... 14

United States v. Approximately $1.67 Million in U.S. Currency,
Stock & Other Valuable Assets,
       513 F.3d 991 (9th Cir. 2008)....................... 20, 21

United States v. Approximately $104,770.00 in U.S. Currency,
       2011 WL 2224624 (N.D. Cal. June 8, 2011)............... 12

iii

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                    PAGE

United States v. Approximately $69,577.00 in U.S. Currency,
        2009 WL 1404690 (N.D. Cal. May 19, 2009).............. 8, 19

United States v. Assorted Firearms, Motorcycles and Other
Personal Property,
        677 F. Supp. 2d 1213 (C.D. Cal. 2009).................... 8

United States v. Contents of Nationwide Life Ins. Annuity
Account,
        2007 WL 682530 (S.D. Ohio Mar. 1, 2007)................. 13

United States v. Contents of Nationwide Life Ins. Annuity,
        2008 WL 1733130 (S.D. Ohio Apr. 10, 2008)............... 21

United States v. GAF Financial Services, Inc.,
        335 F. Supp. 2d 1371 (S.D. Fla. 2004)................. 5, 8

United States v. Ninety-Three (93) Firearms,
        330 F.3d 414 (6th Cir. 2003)........................... 19

United States v. One 2008 Audi R8 Coupe Quattro,
        866 F. Supp. 2d 1180 (C.D. Cal. 2011)................... 12

United States v. One Assortment of Seventy-Three Firearms,
        352 F. Supp. 2d 2 (D. Me. 2005)..................... 14, 15

United States v. One Single Family Residence Located at 2820
Taft St.,
        710 F. Supp. 1351 (S.D. Fla. 1989)..................... 11

United States v. Property at 297 Hawley Street,
        727 F. Supp. 90 (W.D.N.Y. 1990)........................ 11

United States v. Real Property and Improvements Located At 10
Table Bluff Road,
        2007 WL 911849 (N.D. Cal. Mar. 23, 2007)............ 11, 19

United States v. Real Property Located at 5201 Woodlake,Dr.,
        895 F. Supp. 791 (M.D.N.C. 1995)....................... 23

United States v. Real Property Located at 6415 N. Harrison Ave.,
        2012 WL 4364076 (E.D. Cal. Sep. 21, 2012).............. 21

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                          PAGE

United States v. Real Property Located at 15324 County Highway
E.,
    332 F.3d 1070 (7th Cir. 2003)........................... 15

United States v. Real Property Located at Section 18,
    976 F.2d 515 (9th Cir. 1992)........................... 25

United States v. Various Vehicles, Funds, and Real Properties
Described in Attachment A,
    2012 WL 4050829 (D.S.C. Sept. 13, 2012)................ 12

United States v. VIN: WP1AD2A26DLA72280,
    2014 WL 289379, (M.D. Fla. Jan. 27, 2014)............. 14

United States v. $2,067,437.08 in U.S. Currency,
    2008 WL 238514 (E.D. Tex. Jan. 28, 2008)............... 17

United States v. $1,026,781.61 in Funds From Florida Capital
Bank,
    2009 WL 3458189 (C.D. Cal. Oct. 21, 2009)............. 12

United States v. $1,026,781.61 in Funds From Florida Capital
Bank,
    2013 WL 4714188 (C.D. Cal. Jul. 29, 2013)........... 10, 12

United States v. $410,000.00 in U.S. Currency,
    2007 WL 4557647 (D.N.J. Dec. 21, 2007)................ 24

United States v. $247,052.54,
    2007 WL 2009799 (N.D. Cal. Jul. 6, 2007)............ 15, 16

United States v. $166,450.48 in U.S. Currency,
    2013 WL 6623176 (D. Or. Dec. 16, 2013)................. 8

United States v. $151,388 United States Currency,
    751 F. Supp. 547 (E.D.N.C. 1990)........................ 10

United States v. $144,001 in U.S. Currency,
    2010 WL 1838660 (N.D. Cal. May 3, 2010)................. 9

United States v. $138,381.00 in U.S. Currency,
    240 F. Supp. 2d 220 (E.D.N.Y. 2003)................... 24

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                           PAGE

United States v. $133,420.00 in U.S. Currency,
      672 F.3d 629 (9th Cir. 2012)............................... 24

United States v. $129,852 in U.S. Currency,
      2008 WL 5381863 (W.D. La. Dec. 17, 2008).................. 8

United States v. $1,111,120.00 in U.S. Currency,
      2014 WL 619436 (S.D. Ohio Feb. 18, 2014)........ 19, 20, 21

United States v. $100,348.00,
      354 F.3d 1110 (9th Cir. 2004)............................ 24

United States v. $38,000.00 in U.S. Currency,
      816 F.2d 1538 (11th Cir. 1987)........................... 23

United States v. $8,850.00 in U.S. Currency,
      461 U.S. 555 (1983)...................................... 20

United States v. $6,190.00,
      2008 WL 474379 (D. Ore. Feb. 14, 2008).................. 10

United States v. 2004 Cadillac DeVille,
      2008 WL 619358 (S.D. Ohio 2008)...................... 8, 13

United States v. 2009 Dodge Challenger,
      2011 WL 6000790 (D. Or. Nov. 30, 2011).................. 17

Via Mat International South America, Ltd. v. United States,
      446 F.3d 1258 (11th Cir. 2006).......................... 23

Wallace v. Kato,
      549 U.S. 384 (2007)..................................... 18

Warth v. Seldin,
      422 U.S. 490 (1975)..................................... 23

**Federal Statutes**

18 U.S.C. § 981.............................................. 8

18 U.S.C. § 981(g)..................................... passim

18 U.S.C. § 981(g)(1).................................. passim

vi

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                      PAGE

18 U.S.C. § 981(g)(2)....................................... passim

18 U.S.C. § 981(g)(2)(A)........................................ 9

18 U.S.C. § 981(g)(2)(B)....................................... 25

18 U.S.C. § 981(g)(2)(C)........................................ 9

18 U.S.C. § 981(g)(3)...................................... 14, 22

18 U.S.C. § 981(g)(4)....................................... passim

18 U.S.C. § 981(g)(5)....................................... passim

18 U.S.C. § 981(g)(7)....................................... 9, 12

18 U.S.C. § 981(k)............................................. 9

21 U.S.C. § 881(a)(6)....................................... passim

**Federal Rules**

Fed. R. Crim. P. 16.......................................... 12

Supplemental Rule G(6).................................... 22, 25

**State Statutes**

California Penal Code § 1054................................. 10

California Health and Safety Code § 11370.6(a).............. 4, 7

**Other Authorities**

Advisory Committee Notes to Supplemental Rule G(8)(c)........ 24

### MEMORANDUM OF POINTS AND AUTHORITIES

#### PRELIMINARY STATEMENT

Plaintiff United States of America respectfully submits this memorandum of points and authorities in opposition to the motion to dissolve the stay filed by claimant Manuela Gomez (sometimes referred to herein as "claimant").

#### STATEMENT OF FACTS

**A.    The Instant In Rem Civil Asset Forfeiture Action**

On January 18, 2017, plaintiff United States of America filed this in rem civil forfeiture action against the defendant $146,780.00 in U.S. Currency, alleging that the defendant currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because the funds represent or are traceable to proceeds of illegal narcotic trafficking or were intended to be used in additional narcotics trafficking.  Docket No. 1.

On February 21, 2017, former claimant Pedro Luis Pietro filed a verified claim to the defendant $146,780.00 in U.S. Currency, declaring under penalty of perjury that he was the "lawful owner and possessor" of the funds.  Docket No. 10.  On February 22, 2017, Pietro filed a (i) notice of errata advising that his verified claim "was erroneously filed as to the wrong event that was selected for filing;" and (ii) the identical verified claim.  Docket Nos. 11 and 12.  On February 27, 2017, Pietro answered the complaint.  Docket No. 14.

On March 27, 2017, claimant Manuela Gomez (through the same counsel who filed the Pietro verified claims and who is Pietro's aunt [see moving papers at 1:4-5]) filed (i) a verified claim to the defendant $146,780.00 currency, alleging under oath that she

1

is the "lawful owner and possessor" of the $146,780.00 in U.S. Currency; and (ii) her answer to the complaint.  Docket Nos. 19 and 21.  Twenty-one days later, on April 17, 2017, Pietro filed a notice of withdrawal of his verified claim.  Docket No. 22.

The government's complaint provides as follows.  On July 12, 2016, the Drug Enforcement Administration initiated a state wiretap investigation of the narcotics activities of unknown males known as AAA and TNT8/08, who were identified as Mexico-based narcotics traffickers.  Complaint ¶ 8.  Intercepted communications indicated that AAA and TNT8/08 were coordinating the transportation of approximately $155,000 of narcotics proceeds.  Id. at ¶ 9.  Based on the intercepted communications, the courier for these narcotics proceeds was identified as "Sobrino" who utilized a telephone number ending in '3671.  Id. at ¶ 10.  Pursuant to a state search warrant for telephone number '3671, investigators learned that this number was subscribed to the address located in Compton, California where the defendant currency was seized.  Id. at ¶ 11.

On August 27, 2016, intercepted communications indicated that Sobrino was in possession of the narcotic proceeds and was presently at the residence in Compton, California.  Id. at ¶ 12. On August 27, 2016, the surveillance team observed Prieto driving a Honda Crossover up and down the street and looking into vehicles before parking at the Compton residence.  Id. at ¶ 13.  Investigators believed that Prieto was utilizing a counter-surveillance technique.  Id.  Prieto used a key to gain entrance into the residence.  Id.  On August 29, 2016, during the execution of a California state search warrant at the

residence, investigators made contact with three occupants in the residence who were identified as Prieto, A. Gomez and H. Gomez. Id. at ¶ 14. All three claimed to reside at the house and stated that no other persons resided there. Id. Investigators discovered $146,780 in U.S. currency (i.e., the defendant currency) inside two unmarked boxes inside a dresser in the bedroom utilized by Prieto. Id. at ¶ 15. Investigators also located a cellular telephone in the same bedroom. Id. at ¶ 16. Prieto gave consent to search the telephone. Id. Investigators found that the telephone had the number of the courier's telephone number ending in '3671. Id. Prieto, A. Gomez, and H. Gomez each denied ownership of the defendant currency and signed Disclaimer of Ownership and Waiver of Notice forms. Id. at ¶ 17.

**B.    The Related State Criminal Case Against Pietro And The Parties' Stipulation To Stay This Action Pending The Resolution Thereof.**

On December 4, 2017, a felony criminal complaint was filed in Los Angeles Superior Court against Prieto. See People of the State of California v. Pedro Luis Prieto, Los Angeles County Superior Court Case No. BA463301. About two weeks later, on December 20, 2017, the government and claimant Gonzalez filed their "stipulation and request to stay civil forfeiture action pending conclusion of related criminal case," in which they requested that the instant forfeiture action be stayed pursuant to 18 U.S.C. § 981(g)'s mandatory stay provision. Docket No. 25 (emphasis added). Pursuant to the Court's order based upon the parties' stipulation, the Court stayed this civil forfeiture action pending the resolution of the state criminal case, with

1  the government having to file status reports every ninety days

2  in order to enable the Court to monitor the status of this

3  matter.  Docket No. 26.  On February 1 and May 1, 2018, the

4  government filed the status reports.  Docket Nos. 27 and 29.

5      The parties' December 20, 2017 stay stipulation, which

6  attaches the state court criminal complaint as an exhibit, makes

7  clear that the state and federal cases are related, as both are

8  based upon the narcotics trafficking activity that led to the

9  August 29, 2016 seizure of the defendant $146,780.00 in U.S.

10  Currency.  The stipulation (docket no. 25) provides as follows:

> As reflected in the complaint in the criminal
> case, the criminal case charges Prieto with possessing
> over $100,000.00 in narcotic proceeds on August 29,
> 2016, in violation of California Health and Safety
> Code Section 11370.6(a), while the instant civil
> forfeiture case seeks to forfeit the defendant
> $146,780.00 in U.S. Currency seized from claimant
> Pedro Prieto's residence on August 29, 2016 on grounds
> that the funds constitute traceable proceeds of
> narcotics trafficking.  Docket No. 1 (government's
> civil forfeiture Complaint ¶¶ 14, 15 and 18).
> Accordingly, the criminal case and the instant civil
> forfeiture litigation arise out of the same facts and
> will involve many of the same issues of fact and law,
> and judicial economy will be served by staying this
> action.

**ARGUMENT**

**A.   A Stay (And The Continuation Thereof) Is Appropriate
Because Civil Discovery Will Adversely Affect The
Prosecution Of A Related Criminal Case.**

In addition to addressing claimant's argument that the stay

in this action should be dissolved, the government must also set

forth below the authorities establishing that the stay, to which

claimant Gonzalez stipulated before reversing her position, is

appropriate in the first instance.  18 U.S.C. § 981(g)(1) & (2),

which became effective August 23, 2000 as part of the Civil

Asset Forfeiture Reform Act of 2000 ("CAFRA"), provides:

4

(1)   Upon the motion of the United States, the court shall stay the civil forfeiture proceeding if the court determines that civil discovery will adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case.

(2)   Upon the motion of a claimant, the court shall stay the civil forfeiture proceeding with respect to that claimant if the court determines that -

(A)   the claimant is the subject of a related criminal investigation or case;

(B)   the claimant has standing to assert a claim in the civil forfeiture proceeding; and

(C)   continuation of the forfeiture proceeding will burden the right of the claimant against self-incrimination in the related investigation or case.

CAFRA "provide[s] for a stay whenever a court determines that civil discovery will adversely affect the ability of the government to investigate or prosecute a related criminal case." United States v. GAF Financial Services, Inc., 335 F. Supp. 2d 1371, 1373 (S.D. Fla. 2004) (citation omitted).  Although the concept of staying civil forfeiture proceedings was well ingrained in federal jurisprudence before the enactment of CAFRA, the explicit mandatory stay provision in CAFRA (i.e., 18 U.S.C. § 981(g)) lightened the burden on the party seeking a stay by eliminating the requirement that the movant establish good cause for the stay, and permitting stays even if an ongoing investigation had not yet resulted in a criminal indictment.  As noted in United States v. All Funds Deposited in Account No. 20008524845, 162 F. Supp. 2d 1325, 1330-31 (D. Wyo. 2001):

The standard for granting relief under the amended statute has also been changed by striking the words "for good cause shown" found in the former sections of the forfeiture law that establish the standard for granting stay relief.  The new statute requires only that the court "determine[s] that civil discovery will

5

adversely affect the ability of the Government to conduct a related criminal investigation for [sic] the prosecution of a related criminal case." <u>See</u> 18 U.S.C. § 981(g)(1).

Accordingly, while cases granting stays under the prior statute's good cause requirement remain relevant under CAFRA, cases denying stays because good cause had not been shown are no longer good law.

### 1.   The Civil Forfeiture And Criminal Cases Are Clearly Related Under 18 U.S.C. § 981(g)(4)'s Broad Definition.

The criminal case is clearly related to the civil forfeiture action in light of the broad definition of "related criminal case" in 18 U.S.C. § 981(g)(4), which is the statute governing the interpretation of those words as used in 18 U.S.C. § 981(g)(1) and (2)'s mandatory stay provision.  That statutory definition makes clear that neither the parties nor the facts in the civil and criminal cases need be identical for the two cases to be considered related.  Instead, the court must analyze several factors, which are set forth in the disjunctive:

> In determining whether a criminal case or investigation is "related" to a civil forfeiture proceeding, the court shall consider the degree of similarity between the parties, witnesses, facts, and circumstances involved in the two proceedings, without requiring an identity with respect to any one or more factors.

18 U.S.C. § 981(g)(4).  In other words, 18 U.S.C. § 981(g)(4) indicates that the forfeiture and criminal cases should have some similarities but need not be identical in all aspects.  The civil forfeiture and criminal cases are clearly related under the broad statutory definition, despite claimant's conclusory assertion that "the parties and the circumstances are both different."  <u>See</u> moving papers at 3:26-28 n. 1.

Claimant previously stipulated that "the criminal case and the instant civil forfeiture litigation arise out of the same facts and will involve many of the same issues of fact and law." Docket No. 25.  The state felony criminal complaint charges Prieto with, due to his possession of the defendant $146,780.00 on April 29, 2017, violating California Health and Safety Code 11370.6(a),[1] which provides for the criminal prosecution of persons who possess over $100,000.00 in narcotic proceeds or who possess over $100,000.00 in funds intended for the purchase of narcotics.  Similarly, the instant civil forfeiture case seeks forfeiture pursuant to 21 U.S.C. § 881(a)(6)[2] of the $146,780.00 seized from Prieto on August 29, 2016 because they represent traceable proceeds of narcotic trafficking or were intended to be used for narcotic trafficking.

Where, as here, the cases have overlapping facts, courts routinely find that 18 U.S.C. § 981(g)(4)'s related case

---

[1] California Health and Safety Code § 11370.6(a) provides in relevant part:

> Every person who possesses any moneys . . . in excess of one hundred thousand dollars ($100,000) which have been obtained as the result of the unlawful sale, possession for sale, transportation, manufacture, offer for sale, or offer to manufacture any controlled substance . . . , with knowledge that the moneys . . . have been so obtained, and any person who possesses any moneys . . . in excess of one hundred thousand dollars ($100,000) which are intended by that person for the unlawful purchase of any controlled substance . . . and who commits an act in substantial furtherance of the unlawful purchase, shall be punished by imprisonment . . .

[2] 21 U.S.C. § 881(a)(6) renders subject to forfeiture "[a]ll moneys . . . furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys . . . used or intended to be used to facilitate any violation of this subchapter."

7

definition is met.[3]  Claimant, who is criminal defendant Prieto's aunt (moving papers at 1:4-5), has cited no caselaw where a court concluded that the criminal and civil forfeiture cases were not related under 18 U.S.C. § 981(g)(4).  Instead, claimant argues that 18 U.S.C. § 981(g)(1)'s "related criminal case" requirement (which term is defined broadly in 18 U.S.C. § 981(g)(4)) is not met because the parties in the two cases are not identical since the State of California is prosecuting the criminal case while the federal government has filed the civil forfeiture action.  Moving papers at 2:18-3:5 and 3:23-28 n. 1.  Claimant cites no cases to support her argument.[4]

---

[3] United States v. $166,450.48 in U.S. Currency, 2013 WL 6623176, *3 (D. Or. Dec. 16, 2013) (granting stay despite claims filed by third parties who were not criminal defendants; all that is required is that the cases arise out of common facts and circumstances and involve common parties); United States v. Assorted Firearms, Motorcycles and Other Personal Property, 677 F. Supp. 2d 1213 (C.D. Cal. 2009) (granting stay over the objection of claimants who were not defendants in related criminal case; given overlapping facts and relationship between claimants and defendants, civil discovery would likely affect the government's ability to prosecute); United States v. $69,577.00 in U.S. Currency, 2009 WL 1404690, *3 (N.D. Cal. May 19, 2009) ("The court further finds that a stay is warranted even though claimants are not defendants in the criminal case. Claimants are family members of the defendant, and even if there is not an 'identity' of parties in both actions, there is an identity of interests") (citations omitted); United States v. $129,852 in U.S. Currency, 2008 WL 5381863, *2 (W.D. La. Dec. 17, 2008) (stay granted even though claimants were neither targets nor criminal defendants); United States v. 2004 Cadillac DeVille, 2008 WL 619358, *1 (S.D. Ohio 2008) (stay granted because civil discovery could affect criminal investigation of claimants' sons and other third parties; that claimants themselves are not subjects of the investigation is not reason to vacate stay); United States v. GAF Financial Services, Inc., 335 F. Supp. 2d 1371, 1373 (S.D. Fla. 2004) (granting stay and concluding that criminal investigation and civil forfeiture action were clearly related when they involved common facts, similar violations and some common parties).

[4] Claimant's assertions regarding other statutes are wide-of-the mark.  Claimant argues that 18 U.S.C. § 981(g)(1) is limited to federal criminal cases because different subsections

1   Even assuming 18 U.S.C.'s § 981(g)(4) related parties

2   definition requires identical parties in the criminal and civil

3   forfeiture cases (which it clearly does not), claimant is still

4   wrong.  18 U.S.C. § 981(g)(1) plainly provides that a stay is

5   required "if civil discovery will adversely affect . . . the

6   prosecution of a related criminal case;" the statute does not

7   limit stays to related federal criminal cases, nor is there any

8   plausible argument that the legislature intended to restrict the

9   statute in that manner.[5]  Accordingly, in United States v.

10  $144,001 in U.S. Currency, 2010 WL 1838660, *2 (N.D. Cal. May 3,

11  2010), the court granted the government's motion pursuant to 18

12  U.S.C. § 981(g) to stay a civil forfeiture action based upon a

13  related state criminal case, and stated:

14          [Claimant] argues that the Court should not stay this
            matter because the statute is limited to
15          investigations or proceedings that are conducted by
            the federal government, rather than by state
16          governments. . . .  [Claimant] cites no authority in

17  of 18 U.S.C. § 981(g)(1) (i.e., subsections (g)(5) and (g)(7))
    provide that "the Government" may challenge a claimant's
18  standing and "the Government" may submit evidence ex parte to
    show that civil discovery could adversely affect a criminal
19  case.  Moving papers at 2:18-3:5.  However, there is nothing to
    prevent the federal government from showing the harm that would
20  be suffered if civil discovery proceeded while a state criminal
    case was pending, nor does the federal government's post-state
21  criminal case resolution challenge to a claimant's standing have
    anything to do with the propriety of a stay.  In addition,
22  claimant's reliance upon a wholly separate subsection of 18
    U.S.C. § 981 (i.e., 18 U.S.C. § 981(k)) is misplaced, because
23  that subsection deals with forfeited interbank accounts and has
    absolutely nothing to do with 18 U.S.C. § 981(g)(1) stays.

24

25          [5] In fact, 18 U.S.C. § 981(g)(2)(A) and (C), which sets
    forth the circumstances upon which a claimant is entitled to a
26  mandatory stay, requires courts to issue stays if the claimant
    is the subject of a "related criminal case" or continuation of
27  forfeiture proceeding will burden claimant's right against self-
    incrimination in the "related case."  The statute does not
28  exclude state criminal cases - - regardless of whether the
    criminal case is state or federal, a claimant has constitutional
    rights against self-incrimination that warrant the stay.

support of this argument, and the Court does not find it persuasive.  A fair reading of the statute demonstrates that a stay shall be granted if civil discovery would adversely affect either the "ability of the Government to conduct a related criminal investigation" or would adversely affect "the prosecution of a related criminal case."

Accord United States v. $1,026,781.61 in Funds From Florida Capital Bank, 2013 WL 4714188, *1 n. 1 (C.D. Cal. Jul. 29, 2013) (same).[6]

### 2.   The Stay Is Appropriate For Multiple Reasons.

#### a.   A Stay Is Warranted Based Upon The Evidence Presented Under Seal.

A stay is warranted here under 18 U.S.C. § 981(g)(1) because proceeding with civil discovery will have an adverse effect on the prosecution of a related criminal case.  In requesting a stay pursuant to 18 U.S.C. § 981(g)(1), "the Government may, in appropriate cases, submit evidence ex parte in order to avoid disclosing any matter that may adversely affect an ongoing criminal investigation or pending criminal trial."  18 U.S.C. § 981(g)(5).  Pursuant to this provision, the government has submitted a non-public declaration in camera and under seal in support of its stay request.

#### b.   A Stay is Warranted Because Proceeding With Discovery Would Permit Claimant To Conduct Discovery When Parties Are Not Permitted To Do So In Criminal Cases.

Even without considering the evidence submitted under seal, a stay is warranted.  If this action does not remain stayed,

---

[6] See also United States v. $6,190.00, 2008 WL 474379 (D. Ore. Feb. 14, 2008) (court maintained a stay under 18 U.S.C. § 981(g)(1) pending the resolution of a state criminal case); United States v. $151,388 United States Currency, 751 F. Supp. 547, 551 (E.D.N.C. 1990)(applying the more restrictive pre-CAFRA stay statute that required good cause, the court stayed a forfeiture case pending the state criminal case's resolution).

claimant can pursue civil discovery.  Parties are not entitled
to serve interrogatories, document requests or take depositions
in state criminal cases.  See Cal. Penal Code § 1054 et seq.

Where, as here, proceeding with civil discovery would
subject the government to broader discovery that it would have
to endure in the criminal proceeding (e.g., requiring the
government to respond to written discovery or to questioning at
depositions in civil proceeding when parties are not required to
respond to written discovery or testify in depositions in
criminal cases) or permit claimant and other third parties
(including claimant's nephew Prieto) to obtain discovery earlier
than they otherwise would be entitled to receive it in the
criminal case, a stay under the mandatory stay provisions of 18
U.S.C. § 981(g) is warranted.[7]  Indeed, numerous courts examining
the pre-CAFRA stay statute (which is more restrictive than
CAFRA's mandatory stay provision) held that "good cause" was
established because the broader civil discovery potentially
available to a forfeiture claimant could interfere with a
related criminal case.[8]

---

[7] See, e.g., United States v. One Assortment of
Seventy-Three Firearms, 352 F. Supp. 2d 2, 4 (D. Me. 2005) (stay
under 18 U.S.C. § 981(g) is appropriate where civil discovery
will subject the related criminal investigation "to early and
broader civil discovery than would otherwise be possible in the
context of the criminal proceeding"); United States v. Real
Property and Improvements Located At 10 Table Bluff Road, 2007
WL 911849 at *2 (N.D. Cal. Mar. 23, 2007) (stay must be granted
if civil discovery will subject the Government to broader and
earlier discovery than would occur in a criminal case).

[8] United States v. Property at 297 Hawley Street, 727 F.
Supp. 90, 91 (W.D.N.Y. 1990) (good cause requirement satisfied
as stay necessary to protect criminal case from "potentially"
broad discovery demands); United States v. One Single Family
Residence Located at 2820 Taft St., 710 F. Supp. 1351, 1352
(S.D. Fla. 1989) (stay granted as "scope of civil discovery
could interfere with the criminal prosecution").

Cases under CAFRA reach the same result in light of the broad discovery potentially available in civil cases, as CAFRA does not require issuance of a discovery request for the stay. Instead, "Section 981(g)(1) does not require a particularized showing of prejudice or specific harm; rather, all that the Court must determine is whether the civil discovery will interfere with the criminal investigation." United States v. One 2008 Audi R8 Coupe Quattro, 866 F. Supp. 2d 1180, 1183 (C.D. Cal. 2011). Because "more specific disclosure of prejudice through detailed evidentiary support will only result in the very prejudice to the criminal proceeding that the government seeks to avoid[,] . . . [c]ourts have routinely issued Section 981(g)(1) stays on the basis of the Government's allegations of likely prejudice to the criminal proceeding caused by the civil discovery." Id. at 1183-84 (citations omitted and emphasis in original). Accord United States v. $1,026,781.61 in Funds From Florida Capital Bank, 2013 WL 4714188, *1 (C.D. Cal. Jul. 29, 2013) (same).

Accordingly, the government's showing here is more than adequate to satisfy the standard.[9]  In addition, claimant is

_____

[9] See, e.g., United States v. $1,026,781.61 in Funds From Florida Capital Bank, 2009 WL 3458189, *1-2 (C.D. Cal. Oct. 21, 2009) (case agent's conclusory affidavit that civil discovery would "compromise the investigation" because claimants would be able to "learn of [the] nature and scope" of the investigation and "anticipate future investigative action by the government" sufficient to warrant stay); United States v. Approximately $104,770.00 in U.S. Currency, 2011 WL 2224624, *2 (N.D. Cal. June 8, 2011) ("Alioto further objects to the Government's declaration on the ground that [Asset Forfeiture Assistant United States Attorney] Countryman does not have personal knowledge of the criminal investigation to which he refers in his sealed declaration, and thus the declaration is inadmissible as hearsay.  Alito identifies no authority, however, barring the Government from relying on hearsay to support a § 981(g) motion to stay"); United States v. Various Vehicles, Funds, and Real

criminal defendant's aunt and both are represented by the same counsel, providing yet further reason to support the stay.[10] Claimant's reliance upon <u>United States v. All Funds ($357,311.68) Contained in Northern Trust Bank</u>, 2004 WL 1834589 (N.D. Tex. Aug. 10, 2004) is misplaced.[11]

> **c. A Stay Is Warranted Because The Disclosure Of Witnesses And Other Details Regarding The Investigation Leading Up To The Filing Of The Criminal Case Would Adversely Affect The Prosecution Of The Related Criminal Case.**

Additionally, discovery in this case would adversely affect the prosecution of the related criminal case because it would

---

Properties Described in Attachment A, 2012 WL 4050829, *2 (D.S.C. Sept. 13, 2012) (prosecutor's conclusory declaration accepted to support stay).

[10] <u>See United States v. Contents of Nationwide Life Ins. Annuity Account</u>, 2007 WL 682530 at *1 (S.D. Ohio Mar. 1, 2007) (in denying a claimant's motion for reconsideration of the court's issuance of a stay, the court stated "[a]s the government correctly argues, the Court is also very concerned about Defendants in the criminal case using this civil case as a back door method to obtain discovery outside the scope of Fed. R. Crim. P. 16").

[11] In <u>All Funds ($357,311.68) Contained in Northern Trust Bank</u>, the court stated that there is no presumption that civil discovery, in itself, automatically creates an adverse affect on the related criminal proceeding and the government must make an actual showing regarding the anticipated adverse affect. <u>Id.</u> at *2. However, unlike in that case where the government, in conclusory fashion, alleged that discovery could impact the criminal case, the government in the instant case has (i) submitted evidence <u>ex parte</u> pursuant to 18 U.S.C. § 981(g)(5) to show the adverse impact; (ii) pointed to the fact claimant has specifically advised that she will proceed with discovery should the stay be lifted and will file dispositive pretrial motions (moving papers at 2:4-5, 2:12-17 and 3:6-8); and (iii) made other arguments (as shown above as well as later in this brief) about how claimant's ability to conduct discovery could adversely affect the prosecution of the related criminal case.

require the disclosure of witnesses.  Accordingly, a stay is appropriate on that ground alone.[12]

>           **d.   A Stay Is Warranted Because Of The Harm That
>                 Would Befall The Government If Either
>                 Government Or Claimant Discovery Is Allowed.**

Key witnesses involved in the illegal activities (including former claimant Prieto who swore under oath he owned the defendant $146,780.00 in U.S. Currency in its entirety) will likely assert the Fifth Amendment privilege against self-incrimination in response to discovery by the government, meaning that the government would be subject to discovery while Prieto and third parties will not provide discovery on core issues.  Under these circumstances, a stay is appropriate because permitting discovery from the government will allow impermissible one-way discovery.[13]

---

[12] See United States v. VIN: WP1AD2A26DLA72280, 2014 WL 289379, *2 (M.D. Fla. Jan. 27, 2014) (stay granted because discovery of the identities of the witnesses in the civil case would jeopardize the criminal investigation); United States v. All Funds On Deposit in Suntrust Bank Account Number XXXXXXXXX8359, 456 F. Supp. 2d 64, 66 (D.D.C. 2006) (granting motion for a stay because discovery in civil forfeiture case would adversely affect the criminal investigation because the discovery "could compromise any existing confidential informants and/or interfere with the Government's ability to obtain confidential information from others"); United States v. All Funds on Deposit in Business Marketing Account, 319 F. Supp. 2d 290, 294 (E.D.N.Y. 2004) ("The court is satisfied that information routinely ordered disclosed in civil matters would compromise the identity of confidential informants and cooperating witnesses.  Under these circumstances, the court is required to stay this civil action.  18 U.S.C. § 981(g)(1)").

[13] See United States v. One Assortment of Seventy-Three Firearms, 352 F. Supp. 2d 2, 4 (D. Me. 2005) ("a protective order cannot be imposed as an alternative to a stay because [its] effect . . . would be to allow the claimants' to pursue broad civil discovery while the Government would substantially be unable to do so"); 18 U.S.C. § 981(g)(3) ("In no case, however, shall the court impose a protective order as an alternative to a stay if the effect of such protective order would be to allow one party to pursue discovery while the other party is substantially unable to do so").

In addition, claimant's third affirmative defense in her answer provides "[t]he seizure of the defendant property was based on an unlawful search and seizure by state and/or federal authorities in violation of the Fourth Amendment to the United States Constitution." Docket No. 21 at 4:1-6. Claimant's Fourth Amendment affirmative defense raises factual issues[14] that will require testimonial declarations of law enforcement officers who seized the defendant currency and depositions of other persons such as cooperating witnesses, which will subject those individuals to cross-examination by claimant. This is exactly the type of discovery that will harm the prosecution of a related criminal case, which CAFRA's mandatory stay provision was designed to avoid. See United States v. $247,052.54, 2007 WL 2009799, *2 (N.D. Cal. Jul. 6, 2007).

Absent a stay, the government would need written and deposition discovery from claimant, Prieto and other persons involved in the illegal conduct that is part of the state criminal case, as well as from third parties with relevant information pertaining to the criminal case, in order to prove the civil forfeiture case in chief and refute the affirmative defenses claimant has raised. Even if claimant or the third parties responded to government discovery, the government would be creating discovery that would have to be turned over in the

---

[14] See United States v. Real Property Located at 15324 County Highway E., 332 F.3d 1070 (7th Cir. 2003) (affirming the denial of claimant's motion to suppress evidence allegedly obtained in violation of the Fourth Amendment's prohibition against unreasonable search and seizures. The court applied the good faith exception to uphold the search of claimant's real property because the law enforcement officers who searched the premises acted in objectively reasonably reliance upon a facially valid search warrant issued by the judge).

criminal case, which would thereby expose the prosecution strategy for proving that Prieto engaged in illegal conduct. Therefore, the government's discovery would adversely affect the prosecution of a related criminal case.

In United States v. $247,052.54, 2007 WL 2009799 (N.D. Cal. Jul. 6, 2007), claimant Dobbs argued that because he was prepared to move for summary judgment without seeking any discovery, the action should not be stayed because discovery could not adversely affect the criminal prosecution against him. In rejecting Dobbs' argument and staying the action, the court noted that "Dobbs is not the only party that might want discovery in this action, however.  The Government seeks and is entitled to conduct discovery."  Id. at *1 (citation omitted). The court also stated that proceeding with discovery "may have a serious adverse impact on the criminal case against Dobbs."  Id. at *2.  In addition, the court reasoned:

> The factual allegations underlying the two cases are very similar. . . . To prove that the Defendants in this case are linked to the sale and distribution of marijuana, and therefore subject to forfeiture, the Government will have to prove many of the same facts it will need to prove in the criminal case.  The risk of an adverse effect on the criminal case is clear. The Government asserts that it would need to depose certain witnesses-Edward Shield and Wade Trabue-to proceed on its forfeiture claims.  Both are also witnesses with knowledge relevant to the criminal case, and deposing them now would allow Dobbs the opportunity to cross examine them in advance of trial, potentially exposing the Government's strategy for trial, or require them to divulge information related to the criminal case.  Dobbs simply ignores this concern.  The Government would also require testimonial declarations from law enforcement officers, whose testimony will play a central role in the criminal trial, creating additional risks.

16

Id.[15]

Finally, a stay is in the interests of judicial economy as common factual questions are likely to be explored in the criminal case. The civil forfeiture and criminal case involve many of the same illegal acts and transactions and the same or similar issues of fact and law. Many, if not most, of the factual disputes and questions relevant to the civil forfeiture action will likely be explored in the criminal case. In any event, the issues left to be determined in the civil forfeiture case after the resolution of a related criminal case are likely to be pared down. The interest of judicial efficiency will be served by narrowing the focus of the civil case to whatever issues are left unresolved after the criminal case's resolution.

**B.   A Stay Is Also Appropriate Under The Court's Inherent Power To Control Its Dockets.**

The court is also empowered to issue a stay pursuant to its inherent power to control its docket and calendar. Mediterranean Enterprises v. Ssangyong Corp., 708 F.2d 1458, 1465 (9th Cir. 1983). When "it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it," the district court may do so "pending resolution of independent proceedings which bear upon the case." Id. at 1465 (internal

---

[15] Accord United States v. $2,067,437.08 in U.S. Currency, 2008 WL 238514, *6 (E.D. Tex. Jan. 28, 2008) (stay ordered where claimant contented that it could proceed with summary judgment motion without discovery, government claimed it had to engage in ordinary civil discovery and claimant acknowledged that it would be unduly prejudiced if claimant was required to produce discovery while criminal case was pending against claimant); United States v. 2009 Dodge Challenger, 2011 WL 6000790, *2 (D. Or. Nov. 30, 2011) ("I conclude that civil discovery, whether initiated by claimants or necessitated by claimants' motion for summary judgment, would adversely affect the ability of the government to prosecute the related criminal investigation").

17

quotation marks and citation omitted).  This rule "does not require that the issues in [the other] proceedings are necessarily controlling of the action before the court."  <u>Leyva v. Certified Grocers of California, Ltd.</u>, 593 F.2d 857, 863-64 (9th Cir. 1979) (citations omitted).  "[T]he court may order a stay of the action pursuant to its power to control its docket and calendar and to provide for a just determination of the cases pending before it."  <u>Id.</u> at 864.[16]  Therefore, a stay is also proper under the Court's inherent power.

### C.  Claimant's Arguments Are Unavailing.

None of claimant's arguments warrants the stay's dissolution.  Claimant contends that her claim, which she now claims is for only $96,780.00 of the $146,780.00 (<u>see</u> moving papers 1:4-5) despite the fact that her under oath verified claim asserts she claims the entire $146,780.00 (docket no. 19), is somehow severable and unrelated to the criminal case against her nephew Pietro.  Her assertion is pure folly.

The wiretap intercepted telephone conversations indicate the co-conspirators intended to transport approximately $155,000 of narcotics proceeds (<u>see</u> docket no. 1, complaint ¶ 9), which is approximately the amount of the defendant $146,780.00 in U.S. Currency, and therefore shows that claimant's claim is not severable.  In addition, prosecutors must prove that Prieto

_____

[16] <u>See also</u> <u>Landis v. North American Co.</u>, 299 U.S. 248, 254 (1936) that the (district court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"); <u>Wallace v. Kato</u>, 549 U.S. 384, 393-94 (2007) ("it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended").

possessed over $100,000.00 in narcotic proceeds to convict Prieto; if claimant proved in the forfeiture proceeding that $96,780.00 belongs to her, then only $50,000.00 of the $146,780.00 (i.e., $146,780.00 - $96,780.00) would remain for prosecutors to convict Pietro.  In order to reach the $100,000.00 threshold, prosecutors must therefore show that some portion (i.e., more than $50,000.00) of the $96,780.00 claimant now claims represents narcotic proceeds.  Accordingly, not only is claimant's assertion that her claim is independent from the criminal case belied by the facts, the funds she claims are necessarily the same as those involved in the criminal case.

Claimant's due process arguments are likewise incorrect. She asserts that the stay is unconstitutional because it is indefinite (moving papers at 6:11-19), yet the stay is of definite duration because the government is required to file status reports every ninety days regarding the criminal case, in order to allow the Court to monitor the progress of this matter and determine whether the government need submit anything more to justify a continued stay.  This is the typical manner in which courts handle 18 U.S.C. § 981(g) stays.[17]

In addition, claimant argues that due process has been violated because, according to claimant, there has been "delay"

---

[17] See, e.g., United States v. Approximately $69,577 in U.S. Currency, 2009 WL 1404690, *1 (N.D. Cal. May 19, 2009) (ordering the government "to file status reports every 90 days detailing the continued need for a stay"); United States v. Real Property and Improvements, 2007 WL 911849, *1 (N.D. Cal. Mar. 23, 2007) (requiring government "to file status reports every 60 days detailing the continued need for a stay"); United States v. $1,111,120.00 in U.S. Currency, 2014 WL 619436, *1-2 (S.D. Ohio Feb. 18, 2014) (noting that government was required to file quarterly status reports regarding the criminal investigation during the three years that the stay was in effect).

1   (moving papers at 4:15-5:6), yet claimant does not specify when

2   the period of "delay" either began or ended in this case[18] nor

3   mentions that due process is measured from the date assets are

4   seized (here, August 29, 2016) to the date administrative

5   forfeiture proceedings were initiated against the asset (here on

6   October 12, 2016 [Rodgers Decl. ¶ 2]).  A two month delay in

7   commencing forfeiture proceedings (or even a three and one half

8   month period using the January 18, 2017 complaint filing date)

9   does not constitute a due process violation.[19]

10       Furthermore, due process is not measured based upon the

11  period between a complaint's filing and the merits adjudication

12  as to the defendant asset forfeitability.[20]  In addition, the

13

14       [18] Instead of providing this information, claimant merely
     states that the civil forfeiture case was filed January 18, 2017

15  (moving papers at 1:6-9), the criminal case was filed December
     4, 2017 (id.), Prieto withdrew and claimant filed their claims

16  nine months before the criminal case was filed (id.), and cases
     have found due process violations with respect to periods of

17  time that claimant has not linked to the instant case and have
     nothing to do with the instant case (id. at 4:15-5:6).

18       [19] See United States v. $8,850.00 in U.S. Currency, 461 U.S.

19  555, 565 (1983) (cited by claimant, where the Supreme Court
     measured the delay between the seizure of the asset and

20  commencement of administrative forfeiture proceedings and found
     that an eighteen-month delay did not violate due process);

21  United States v. Approximately $1.67 Million in U.S. Currency,
     Stock & Other Valuable Assets, 513 F.3d 991, 998, 1001 (9th Cir.

22  2008) (measuring the delay between the asset seizure and the
     civil forfeiture complaint filing and finding that a five year

23  delay did not violate due process); United States v. Ninety-
     Three (93) Firearms, 330 F.3d 414, 426 (6th Cir. 2003)

24  (measuring delay between asset seizure and complaint filing and
     finding that a three year delay did not violate due process).

25       [20] As reflected in the preceding footnote, the Supreme Court
     in United States v. $8,850.00 in U.S. Currency, 461 U.S. 555

26  (1983), analyzed due process and, in doing so, applied the four-
     factor test discussed in Barker v. Wingo, 407 U.S. 514 (1972).

27  The court noted in United States v. $1,111,120.00 in U.S.
     Currency, 2014 WL 619436, *2 (S.D. Ohio Feb. 18, 2014) that:

28
         the Barker test requires balancing the interests of
         the claimant against those of the government to

20

length and unknown duration of the stay does not violate due

process (despite claimant's arguments about the stay's unknown

duration [see moving papers at 6:6-15]), because this civil

forfeiture case has been stayed due to a pending criminal case.[21]

None of claimant's cases hold or suggest otherwise.

Dusting off pre-1980 case law, claimant cites decades-old cases,

decided long before the adoption of CAFRA which enacted that

mandatory stay statute involved in the instant case and have

nothing to do with the issues at hand.[22]

---

> determine whether the delay in initiating the
> forfeiture process (i.e., the time period between
> seizure of the property and bringing a judicial
> forfeiture action) has resulted in a deprivation of
> property without due process.  Thus, the Barker test
> is inapplicable to the instant case, where the
> Government timely initiated the forfeiture action and
> this Court appropriately stayed the proceedings.

(Emphasis in original and citation omitted).

[21] Courts have routinely rejected claimant due process arguments regarding the length and unknown duration of mandatory 18 U.S.C. § 981(g) stays.  See, e.g., United States v. Real Property Located at 6415 N. Harrison Ave., 2012 WL 4364076, *5 (E.D. Cal. Sep. 21, 2012) (in granting the government's motion for a stay, the court noted "the Court will not speculate on the anticipated duration of Choi's criminal proceedings.  The Court notes, however, that in considering the reason for the delay . . . the presence of related criminal proceedings has long been considered a justification for a lengthy delay in forfeiture proceedings") (citations omitted); United States v. Contents of Nationwide Life Ins. Annuity, 2008 WL 1733130, *4 (S.D. Ohio Apr. 10, 2008) (the court held that stay of civil forfeiture action for eighteen months while criminal proceedings were pending did not violate due process); United States v. $1,111,120.00 in U.S. Currency, 2014 WL 619436 (S.D. Ohio Feb. 18, 2014) (the court held that stay of civil forfeiture action for three years while criminal investigation was ongoing did not violate due process).  See also United States v. Approximately $1.67 Million in U.S. Currency, Stock & Other Valuable Assets, 513 F.3d 991, 998, 1001 (9th Cir. 2008) (the court held that a 5 year delay between the asset seizure and filing of a forfeiture complaint did not violate due process).

[22] In United States v. Four (4) Contiguous Parcels of Property Situated in Louisville, Jefferson County, Ky., 864 F.

21

In addition, claimant has it backwards when she argues that the government could move for a protective order if claimant conducted discovery that the government found objectionable. But claimant bears the burden under 18 U.S.C. § 981(g)(3) to set forth the terms of a protective order that claimant contends should be issued, in lieu of the stay, that will protect the government's interests and not impact the prosecution of the state criminal case.  Claimant has not done so and, for the reasons set forth above, the government submits there is no protective order that could be entered in this case that would be appropriate and protect the investigation and criminal case.

Finally, while claimant notes that she responded to government interrogatories (moving papers at 1:17 and 2:10), she ignores the fact that she responded to the government's Supplemental Rule G(6) special interrogatories - - interrogatories that are appropriately served, regardless of any stay.  By statute, special interrogatories are limited to inquiries pertaining to a claimant's identity and relationship to the defendant asset[23] and, for the reasons explained below,

Supp. 652 (W.D Ky. 1994), the court (i) denied the government's motion for a stay under the predecessor to CAFRA's 18 U.S.C. § 981(g) mandatory stay provision, which contained an additional requirement that the government establish "good cause" for a stay (see discussion above); and (ii) noted that the government was seeking an impermissible stay of indefinite duration (which is not the situation in the instant case, as discussed above). Likewise, in In re Ramu Corp., 903 F.2d 312 (5th Cir. 1990), the court reversed a stay and remanded the case for the district court to determine whether the "good cause" requirement had been met under predecessor stay statutes.

[23] See Supplemental Rule G(6) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("[t]he government may serve special interrogatories limited to the claimant's identity and relationship to the defendant property without the court's leave at any time after the claim is filed and before discovery is closed").

play a critical role in asset forfeiture cases to weed out at an early stage claims filed by improper claimants, by allowing the government via the special interrogatories to determine whether a claimant has constitutional standing to maintain a claim.

As intervenors seeking to challenge the forfeiture, claimants in in rem civil forfeiture cases must establish they have sufficient interest in the property to invoke the court's jurisdiction.[24]  If a claimant does not have a real interest in the property, there is no "case or controversy" and, consequently, no basis for a court to exercise jurisdiction under Article III of the Constitution.[25]  For that reason, a claimant's Article III standing is a threshold issue in every in rem civil forfeiture case.[26]

----

[24] See United States v. $38,000.00 in U.S. Currency, 816 F.2d 1538, 1543 n. 12 (11th Cir. 1987) (because a civil forfeiture action is brought against the property in rem, and not against the claimant personally, the government has no burden of proof until the claimant demonstrates that he has "a legally cognizable interest in the property that will be injured if the property is forfeited to the government" sufficient to satisfy the case or controversy requirement).

[25] See United States v. Real Property Located at 5201 Woodlake Dr., 895 F. Supp. 791, 793 (M.D.N.C. 1995) ("in order to contest a forfeiture, a claimant first must demonstrate a sufficient interest in the property to give him Article III standing; otherwise, there is no 'case or controversy,' in the constitutional sense, capable of adjudication in the federal courts") (citations and internal quotation marks omitted).

[26] See Via Mat International South America, Ltd. v. United States, 446 F.3d 1258, 1262 (11th Cir. 2006) ("standing is the 'threshold question in every federal case, determining the power of the court to entertain the suit'") (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)); United States v. Real Property Located at Section 18, 976 F.2d 515, 520 (9th Cir. 1992) (standing is a "threshold issue . . . [and] claimant has the burden of establishing, by a preponderance of the evidence, that he has an interest in the property") (citations omitted).

As many courts have recognized, the in rem nature of civil forfeiture actions creates a substantial danger that claims will be filed by persons with no real interest in the property.[27] Entirely frivolous claims may be filed by people who have no connection with the forfeiture case, while other claims may be filed by straw men, nominees, couriers or other third parties seeking to contest the forfeiture in their own names while concealing the identity of some person who cannot or will not file a claim on his or her own behalf.

In such cases, pretrial challenges to a claimant's standing, based upon a claimant's Supplemental Rule G(6) interrogatory responses and other evidence, are critical: they present the only opportunity for courts to weed out claims filed by improper claimants who lack constitutional standing before the government must respond to litigation actions taken by the claimant.[28]  (In addition, the government notes that claimants must establish their standing to be entitled to a mandatory stay

---

[27] United States v. $100,348.00, 354 F.3d 1110, 1118-19 (9th Cir. 2004) ("the danger of false claims in [civil forfeiture] proceedings is substantial") (internal quotations and citation omitted); Mercado v. U.S. Customs Service, 873 F.2d 641, 645 (2d Cir. 1989) (there is a "substantial danger of false claims in forfeiture proceedings"); United States v. $138,381.00 in U.S. Currency, 240 F. Supp. 2d 220, 228 (E.D.N.Y. 2003) (same)

[28] See Advisory Committee Notes to Supplemental Rule G(8)(c) (noting the "special role that subdivision (6) [i.e., Supplemental Rule G(6)] plays in the scheme for determining claim standing"); United States v. $133,420.00 in U.S. Currency, 672 F.3d 629, 642 (9th Cir. 2012) ("[t]he purpose of the rule is to permit the government . . . to gather information that bears on the claimant's standing;" e.g., special interrogatories are used to "test the veracity of [claimant's] claim of ownership") (internal quotation marks omitted); United States v. $410,000.00 in U.S. Currency, 2007 WL 4557647, *7 & n. 5 (D.N.J. Dec. 21, 2007) (special interrogatories are necessary to insure claimant has standing and to protect against nominee claimants).

24

under the claimant-requested mandatory stay provision, *i.e.*, 18

U.S.C. § 981(g)(2)(B), which is not at issue here).

Here, the government's special interrogatories were

entirely appropriate, as claimant Manuela Gomez did not appear

to have any relationship whatsoever to the defendant currency.

As the government alleged in its complaint, when officers

executed the search warrant at the Compton, California residence

and seized the defendant currency, officers identified the three

occupants in the residence as Prieto, A. Gomez and H. Gomez, and

all three claimed to reside there and stated that no one else

resided there.  Docket No. 1 (complaint) at ¶ 14.  Accordingly,

without Supplemental Rule G(6) interrogatories, the government

could not determine how claimant Manuela Gomez could have any

relationship to the defendant currency and constitutional

standing to assert a claim challenging the forfeiture of the

defendant currency.

**CONCLUSION**

For the foregoing reasons, the government respectfully

requests that claimant's motion to dissolve the stay be denied.

Dated: June 4, 2018          Respectfully submitted,

                             NICOLA T. HANNA
                             United States Attorney
                             LAWRENCE S. MIDDLETON
                             Assistant United States Attorney
                             Chief, Criminal Division
                             STEVEN R. WELK
                             Assistant United States Attorney
                             Chief, Asset Forfeiture Section


                             /s/ Victor A. Rodgers_____
                             VICTOR A. RODGERS
                             Assistant United States Attorney

                             Attorneys for Plaintiff
                             UNITED STATES OF AMERICA